**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

VARIOUS CRYPTOCURRENCY SEIZED FROM BINANCE USER ID 61886539 IN THE NAME OF [PERSON A],

Defendant.

_______________________________/

Case No. 2:25-cv-12945

UNITED STATES DISTRICT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING CLAIMANTS' MOTION TO PROCEED UNDER PSEUDONYMS AND DENYING WITHOUT PREJUDICE CLAIMANTS' MOTION TO SEAL [ECF No. 8]**

## I. INTRODUCTION

This case is an *in rem* civil forfeiture action pursuant to 18 U.S.C. § 981, arising from alleged violations of 18 U.S.C. §§ 1343, 1956, 1957, and the Emergency Decree on Digital Asset Businesses of 2018 [ECF No. 1]. Before the Court is Claimants' motion to proceed under pseudonyms and Claimants' motion to seal [ECF No. 8].[1] Claimants filed the instant motions together [ECF No. 8] on December 8, 2025, without any exhibits. Plaintiff, the United States, filed a response [ECF No.

[1] In this action, Claimants total 106 individuals who are identified pseudonymously by their initials in Schedule A of Claimants' Verified Claim. ECF No. 7-2, PageID.74–78.

12] on December 30, 2025, to which Claimants filed a reply on February 5, 2026 [ECF No. 14].

For the reasons expressed below, Claimants' motion to proceed under pseudonyms is **DENIED**, and Claimants' motion to seal is **DENIED WITHOUT PREJUDICE**.

## II. BACKGROUND

The Government filed this civil forfeiture action on September 17, 2025, alleging that Defendant *in rem* is subject to forfeiture for constituting property involved in transactions or attempted transactions related to money laundering and wire fraud as part of a larger cryptocurrency investment fraud scheme. ECF No.1, PageID.47–48. To execute the scheme, scammers created fake website interfaces and investment accounts that gave the appearance of legitimate investment platforms and lured victims, including Claimants, into depositing their own funds into the fake investment accounts. *Id.* at PageID.10–11. The scammers initiated the scheme by first sending the victims a seemingly innocuous or misidentified message. *Id.* at PageID.10, ¶ 24. From there, the scammers used elaborate storylines to earn the victims' trust and convince the victims that they shared a romantic or otherwise close personal relationship. *Id.* at ¶ 25.

Upon gaining the victims' trust in this fashion, the scammers enticed the victims to invest in the scheme by depositing their funds into the fake investment accounts.

*Id.* After doing so, the fake website interfaces displayed fictitious investment portfolios and abnormally large but phony investment returns. *Id.* The victims' deposited funds would then be routed to a cryptocurrency address that the scammers controlled, preventing the victims from later withdrawing their funds. *Id.* at PageID.11, ¶ 26. When victims attempted to withdraw their funds, the scammers gave various excuses as to why their funds could not be withdrawn, and in some instances, the scammers charged the victims additional fees with the promise of releasing their funds. *Id.* The victims, however, were subsequently locked out of their fake accounts and were unable to recover any of the funds they deposited or the fees they paid. *Id.* Defendant *in rem* totals approximately $33.9 million in Claimants' losses to the scheme. *Id.* at ¶ 27.

On December 2, 2025, Claimants filed a Verified Claim contesting the Government's forfeiture action on the basis that Claimants are innocent property owners as defined by 18 U.S.C. § 983(d) and therefore possess superior ownership rights to Defendant *in rem*. ECF No. 7-2, PageID.70–72; *see* 18 U.S.C. § 983(d)(1) ("An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence."). Specifically, Claimants allege that they have a lawful ownership interest in their stolen assets, that they did not voluntarily transfer ownership of their stolen assets to the perpetrators of the

scheme, and that they did not knowingly engage in any unlawful conduct, thus entitling them to recover Defendant *in rem*. *Id.* at PageID.72, ¶ 11. This Court now considers the instant motions.

## III. <u>LEGAL ANALYSIS</u>

### A. Claimants' Motion to Proceed Under Pseudonyms

"Litigating under a pseudonym is generally disfavored." *Doe v. Streck*, 522 F. Supp. 3d 332, 333 (S.D. Ohio 2021) (citing Fed. R. Civ. P. 10(a)); *see* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). A court, however, "may allow a party to use a pseudonym where 'privacy interests *substantially outweigh* the presumption of open judicial proceedings.'" *Streck*, 522 F. Supp. 3d at 333 (emphasis added) (quoting *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004)). The decision to allow a party to litigate under a pseudonym resides with the sound discretion of the trial court. *Id.* (citing *Porter*, 370 F.3d at 560). In exercising this discretion, the Court may consider the following factors:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Porter*, 370 F.3d at 560 (quoting *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981)). These four *Porter* factors, however, are non-exhaustive, and no one factor is dispositive. *See, e.g.*, *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636

(6th Cir. 2005) ("When determining whether such an exception is justified, a court may consider, *among others*, the [four] factors . . . ." (emphasis added)); *Doe v. Carson*, No. 19-1566, 2020 WL 2611189, at *2 (6th Cir. May 6, 2020) ("The district court pointed out that, even assuming that Doe satisfied the second factor, that factor was not dispositive.").

Here, concerning the first *Porter* factor, Claimants are specifically challenging the Government's forfeiture action on the basis that Claimants are innocent, lawful owners and/or beneficiaries of Defendant *in rem*, rendering the Government's forfeiture action unlawful. *See* ECF No. 7-2; ECF No. 14, PageID.155–56; 18 U.S.C. § 983(d)(1). Although it is true that *Porter* involved plaintiffs who initiated an action challenging governmental conduct, rather than claimants who defended against an *in-rem* forfeiture action initiated by the Government, the two challenges are similar under the first *Porter* factor. Claimants who contest the Government's forfeiture action challenge the Government's activity—specifically, the Government's exercise of its statutory authority to seize title to Claimants' asserted property interests. *See Porter*, 370 F.3d at 560. Claimants in this case thus challenge the Government's activity through their Verified Claim by asserting that they possess superior ownership rights to Defendant *in rem* over the Government. *See id.*

However, the type of government action being challenged—civil forfeiture—is not one that warrants pseudonymity in this case. Indeed, a claimant's challenge to a

civil forfeiture action is not a challenge for which courts routinely afford a protective order. *See, e.g.*, *Streck*, 522 F. Supp. 3d at 334 (allowing a plaintiff to proceed under a pseudonym when claiming a government official sexually assaulted them (first citing *Doe v. Mitchell*, No. 2:20-cv-00459, 2020 WL 6882601, at *5 (S.D. Ohio Nov. 24, 2020); then citing *NMIC Ins. Co. v. Smith*, No. 2:18-cv-533, 2018 WL 7859755, at *2 (S.D. Ohio Oct. 24, 2018); then citing *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006); and then citing *K.S. v. Detroit Pub. Sch.*, No. 14-12214, 2015 WL 13358204, at *3 (E.D. Mich. July 22, 2015))); *Porter*, 370 F.3d at 560 (weighing the first *Porter* factor in the plaintiffs' favor because the plaintiffs challenged governmental activity related to their religious beliefs (citing *Stegall*, 653 F.2d at 186)). The first *Porter* factor therefore does not, standing alone, establish that Claimants' privacy interests substantially outweigh the presumption of open judicial proceedings. *See Porter*, 370 F.3d at 560–61.

Concerning the second *Porter* factor, Claimants argue that as victims of the cryptocurrency investment fraud scheme, the disclosure of Claimants' identities would constitute information of the "utmost intimacy," thus requiring anonymity. ECF No. 8, PageID.81–82. Claimants cite to *United States v. Lichtenstein* as persuasive authority to support their argument. *Id.*; *see* 769 F. Supp. 3d 32 (D.D.C. 2025). Specifically, Claimants argue that their identities and personal identifiers

constitute "sensitive or confidential information" given their status as victims of the investment fraud scheme. ECF No. 8, PageID. 81–82.

Claimants' reliance on *Lichtenstein*, however, is misplaced. "[W]hether information is of the utmost intimacy should be 'construed narrowly' given the preference for open judicial proceedings." *Poe v. Lowe*, 756 F. Supp. 3d 537, 545 (M.D. Tenn. 2024) (quoting *Kaltenbach v. Hilliard City Schs.*, No. 2:23-CV-187, 2023 WL 3023020, at *1 (S.D. Ohio Apr. 20, 2023)). Contrary to Claimants' contentions, "the mere risk that [Claimants'] identities [as victims] will be made public is not sufficient to merit pseudonymous status under this factor." *See United States v. Approximately 1,210,734.00 USDT*, No. 26-CV-1988 (TSC), 2026 WL 2481725, at *1 (D.D.C. Aug. 24, 2026). Disclosed information that commonly qualifies as of the "utmost intimacy" include allegations centered on matters concerning religious beliefs, sex, sexual identity, sexual assault, and loathsome diseases—none of which are raised in the instant case. *See, e.g.*, *Porter*, 370 F.3d at 560; *Streck*, 522 F. Supp. 3d at 334; *K.S. v. Detroit Pub. Schs.*, 2015 WL 13358204, at *3; *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 694 F. Supp. 3d 1040, 1044 (M.D. Tenn. 2023).

Claimants further argue that exposing their identities will expose them to repeated victimization by fraudsters and will "chill efforts to report similar fraudulent crime by similarly situated claimants," further warranting the use of

pseudonyms. ECF No. 8, PageID.82–83; ECF No. 14, PageID.158–61. Claimants argue that this is particularly true because "a significant number of the Claimants in this matter are seniors, a demographic frequently victimized by scammers." ECF No. 8, PageID.83. Claimants, however, have failed to "provide[] any evidence for such harm beyond unsupported and conclusory statements," which "does not support [Claimants] proceeding by pseudonym." *See Poe*, 756 F. Supp. 3d at 546; *Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2021 WL 2651188, at *6 (M.D. Tenn. June 28, 2021) (holding that a plaintiff seeking to proceed under a pseudonym "must 'base their allegations . . . on more than just mere speculation'" (quoting *Rapp v. Fowler*, 537 F. Supp. 3d 521, 528 (S.D.N.Y. 2021))); *see also United States v. Approximately 1,210,734.00 USDT*, 2026 WL 2481725, at *2 ("Claimants do not provide any particularized details about the likelihood of future harm; rather, they offer broad generalizations about what *might* happen to all twenty-one of them. Such 'speculative and unsubstantiated claims of harm' do not favor pseudonymity." (quoting *In re Sealed Case*, 971 F.3d 324, 328 (D.C. Cir. 2020))). Their argument also fails to address those Claimants who are not seniors, further highlighting the speculative nature of the harms they allege. *See United States v. Approximately 1,210,734.00 USDT*, 2026 WL 2481725, at *2.

Lastly, the third and fourth *Porter* factors completely weigh against Claimants: the litigation does not compel Claimants to disclose an intention to violate the law,

and no Claimants are children. *See Porter*, 370 F.3d at 560–61. Thus, in balancing all four *Porter* factors, the Court finds that Claimants have failed to overcome the strong presumption of open judicial proceedings.

Claimants' dependence on *Lichtenstein* does not alter this Court's conclusion. In *Lichtenstein*, "the court permitted victims of a cryptocurrency scam to proceed under pseudonyms and file documents partially under seal . . . [b]ut that was because the Government had expressly consented to the 'masking of [John Doe's] name as well as any' personally identifiable information in filings." *See United States v. Approximately 1,210,734.00 USDT*, 2026 WL 2481725, at *2 (citing *Lichtenstein*, 769 F. Supp. 3d. at 39, 41). In this case, "[t]here is no such consent on the record." *See id.*; ECF No. 12, PageID.130–31 ("Here, the United States objects to the masking of Claimants' names."). Should "[Claimants] wish to prevent the disclosure of sensitive information," their remedy here is to seek a redaction of that information. *See Poe*, 756 F. Supp. 3d at 546 (citing *Ramsbottom*, 2021 WL 2651188, at *3).

Claimants' motion to proceed under pseudonyms is therefore denied.

**B. Claimants' Motion to Seal**

The Court agrees with the Government that Claimants failed to follow the procedural requirements outlined by Eastern District of Michigan Local Rule 5.3(b)(3)(A)(v)–(vi) when filing a motion to seal. *See* E.D. Mich. LR 5.3(b)(3)(A)(v)–(vi). Specifically, Claimants failed to file along with their motion:

(1) "a redacted version of the document(s) to be sealed, filed as an exhibit to the motion, unless the proponent of filing is seeking to file the entire document under seal, in which case a blank sheet shall be filed as an exhibit"; and (2) "an unredacted version, filed as a sealed exhibit, of the document that is sought to be filed under seal." *See id.*

This motion is therefore denied without prejudice for Claimants' failure to satisfy the procedural requirements of Eastern District of Michigan Local Rule 5.3.

## IV. CONCLUSION

For the foregoing reasons, Claimants' motion to proceed under pseudonyms is **DENIED**, and Claimants' motion to seal is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated: September 28, 2026

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge